IN THE UNITED STATES DISTRICT COURT FOR THE
EASTERN DISTRICT OF VIRGINIA
Alexandria Division

UNITED STATES OF AMERICA, )
Plaintiff, ) CR. NO. 10-cr-279
vs. )
EUGENE ANTHONY THOMAS, )
Defendant. )

TRANSCRIPT OF SENTENCING

December 3, 2010

---

BEFORE: THE HONORABLE GERALD BRUCE LEE
UNITED STATES DISTRICT JUDGE

APPEARANCES:

FOR THE GOVERNMENT: OFFICE OF THE UNITED STATES ATTORNEY
BY: JONATHAN FAHEY, ESQ.

FOR THE DEFENDANT: OFFICE OF THE FEDERAL PUBLIC DEFENDER
BY: AAMRA AHMAD, ESQ.

---

OFFICIAL COURT REPORTER: RENECIA A. WILSON, RMR,CRR
U.S. District Court
401 Courthouse Square
Alexandria, VA 22314
(703)501-1580

(Thereupon, the following was heard in open court at 9:18 a.m.)

THE CLERK: 1:10 criminal 279, United States versus Eugene Anthony Thomas.

MR. FAHEY: Good morning, Your Honor. Jonathan Fahey for the United States.

THE COURT: Good morning.

MS. AHMAD: Good morning, Your Honor. Aamra Ahmad on behalf of Eugene Thomas who is present.

THE COURT: Good morning, Ms. Ahmad.

Good morning, Mr. Thomas.

MR. THOMAS: Good morning.

THE COURT: Ms. Ahmad, I take it that you and Mr. Thomas had an opportunity to review the presentence report.

MS. AHMAD: Yes, Your Honor.

THE COURT: And, are there any objections to the report?

MS. AHMAD: No objection to the Guideline calculation and to any part of the report, Your Honor.

THE COURT: All right, thank you.

Mr. Fahey, I take it the government's had a chance to review the presentence report.

MR. FAHEY: Yes, Your Honor.

THE COURT: No objection?

MR. FAHEY: There is no objection. There's just one thing I just noticed on paragraph 12, the amount is listed as $250.

THE COURT: Just one second, let me get to that page. Paragraph 12 of page 6, yes.

MR. FAHEY: We believe the amount should actually be $350 and we -- sorry we didn't catch that sooner. I don't think there's any objections to that.

MS. AHMAD: We don't have any objection to that.

THE COURT: All right, we'll change the report, paragraph 12 to $350 was taken from the cash register. The victim gave Mr. Thomas $350 from the cash register in response to the robbery.

Does the government want to be heard on sentencing in this matter, Mr. Fahey?

MR. FAHEY: Just briefly, Your Honor. As we described in our past papers and we're asking for the mandatory minimum of 35 years which in this case is supported by the 3553 factors.

As the Court's aware, this defendant not only pled guilty to the two offenses that he committed but he also admitted in the statement of facts to 12 robberies in total, all of these robberies involving firearms. One of these robberies involved a firearm being discharged.

Each robbery put victims --

THE COURT: Tell me more about the discharge of the weapon.

MR. FAHEY: The -- on the discharge one, the defendant initially demanded money or demanded a safe to be opened. The -- the victim didn't immediately comply. The firearm was discharged on the ground or towards -- towards the ground. I believe the defendant's position is it was accidental. That was discharged.

But in either event, he certainly put the victim in danger, his life in danger. And even the other ones when the firearm wasn't discharged, every victim was placed in danger. And these victims are simply people working as clerks in stores, just trying to do their jobs and they were placed in danger by the defendant for relatively small amounts of money in each of these cases, the amounts are several hundred dollars or -- I think the most was maybe a thousand dollars.

So, under the 3553 factors, it certainly is a serious -- serious offense and a number of serious offenses.

In addition to that, Your Honor, the 35-year sentence would protect the public and promote respect for the law. It would deter the defendant and hopefully deter others from engaging in similar conduct, and it

would avoid any unwarranted disparities because similarly-situated defendants who have committed these same offenses have received similar sentences.

So for all those reasons, we do ask for a sentence of 35 years.

THE COURT: All right.

Ms. Ahmad, I'll hear from you.

MS. AHMAD: Yes, Your Honor.

Your Honor, we understand that there's a mandatory minimum in this case, and we understand that this Court can go all the way up to life in this case.

We submit that a sentence no greater than the mandatory minimum should be imposed.

At the same time, though, we also submit that the mandatory minimum does not adequately take into consideration the 3553(a) factors. We know the Court cannot go below 35 years. We think 35 years is too high, but we would respectfully ask for a sentence no greater than the mandatory minimum.

We submit that the mandatory minimum does not adequately take into consideration my client's childhood. He grew up without a male role model. He was neglected by a mother who I'm sure tried but she was working full time and raising three sons.

There was a great deal of instability in his

background. He left his mother's home at the age of 16, went around living with other family members. He also developed a significant substance abuse problem and during his developmental years was regularly, on a daily basis, using marijuana. And we'll never know how that substance abuse affected his cognitive abilities and any decisions that he has made since then.

His criminal history is not what we would expect to see in a case where the mandatory minimum is 35 years.

He has no history of using weapons in his prior offenses. He has served one jail sentence that was six years ago and that was an 11-month sentence.

All of his other offenses were offenses that resulted in sentences of probation or of a fine.

Thirty-five years does reflect the seriousness of the offense, but it does not take into consideration that this conduct was a serious departure from his past conduct. It does not reflect that at the time of the offense he was drinking to the point of intoxication daily. It does not reflect the remorse that he has expressed to the probation office. It does not reflect the efforts that he made to plead guilty pre-indictment, to accept responsibility for his conduct. It does not take into consideration adequately the

apology that he's going to try to express to the Court today, and I'll try to let him do that.

He asks the Court to consider his remorse. He asks the Court to consider his age. He asks the Court to consider the promise that he does have, and that has been shown, I hope, through his past employment record and through the letters that his family has written to the Court.

But we do understand that there's a mandatory minimum. We ask the Court to not go above that mandatory minimum. We are hopeful that we will be back in front of the Court at some other time. We don't know that that would happen, but we're hopeful for that.

THE COURT: All right.

Mr. Thomas, if you'd come to the podium with your lawyer, please.

Mr. Thomas, is there any statement you want to make on your own behalf?

MR. THOMAS: Yes, sir.

THE COURT: I'm listening.

MR. THOMAS: I wrote a letter. First, I would like to send my deepest apologies to the victims and the victims' family for these terrible acts of violence I committed upon them.

I am deeply, deeply remorseful for what I

have done and hope somewhere down the line each person could forgive me.

Next, I would like to apologize to my daughter and my entire family for letting them down and bringing unneeded stress to their lives for which I am truly sorry.

I accept what I did was wrong as a man. We have choices, and these choices we have to live with. I take full responsibility for my actions, and wish I could change them if I could.

I've learned my lesson and understand I have to be punished for these crimes I've committed. I just ask the Court to find in their hearts to see that I'm a loving, caring, compassionate person who comes from a great family that makes terrible, terrible decisions and not to look solely on the crimes or the severity of them as well.

I just want another chance to be a productive citizen in society. Thank you.

THE COURT: Mr. Thomas, you're before the court as your lawyer and as you know for some very, very serious offenses, 12 armed robberies. And something in you decided to go out and threaten these clerks at the gas stations and convenient stores and to rob them, not once, not twice, but 12 different times.

The maximum punishment is life. Why shouldn't you get a life sentence?

MR. THOMAS: Why shouldn't I?

THE COURT: Yeah.

MR. THOMAS: Like I said, I understand the severity of the crime, and at that time when I was out committing these crimes, I really wasn't in my right state of mind.

I -- something I never done before. I'm not making any excuses, but I believe that I shouldn't get a life sentence because I think I have the ability to rehabilitate and to come out and do way better than I have.

THE COURT: Well, Mr. Thomas, I've read the letters submitted by your aunt and by your family and Ms. Shaman says -- Paris Shaman I think is your cousin. You were drinking energy drinks and caffein I guess in addition to doing alcohol. And your aunt said that you did well in school and that you attended culinary school. And your friend Brian said that you were a writer and a cook.

There is something there. But the bad part of it is very, very dangerous and presents a threat to public safety, particularly those who work and earn minimum wage, who go to work every day at convenient

stores, gas stations, who are just trying to do their work and some guys comes along and threatens their life with a gun and in this one instance where a weapon was discharged.

I don't have to tell you because you heard what the prosecutor said that the risk of what could have occurred there is quite substantial.

Congress has already decided the minimum sentence. My question is whether I should give you a life sentence. And there are others who I've given, individuals who have comitted multiple armed robberies a life sentence before because I think they need to be separated from the rest of us for the rest of their lives.

What you have going for you basically is your youth, your age, 25, and the fact that you have not in your prior record -- you don't have any prior history of violent crime. So what I'm going to do is this. I'm going to give you the sentence that your lawyer and I and the government, I think, ultimately thinks is probably appropriate here which is 35 years.

So I'm going to sentence you to a term of 120 months on Count I, and 300 months on Count II. The sentence in Count II will run consecutive with the sentence in Count I.

I'm going to place you on a term of supervised release for five years as to each count. They will run concurrently, at the same time. I'm going to require you to participate in substance abuse treatment and testing at the direction of the probation officer and also require you to pay restitution to the victims that are enumerated in the report including Sunoco, BP, and I think that there are others who are listed, and your lawyer and you are very familiar with them.

I'm not going to impose any fine because I make a finding you do not have the ability to pay any fine, cost of incarceration or cost of supervision. And the $200 special assessment has to be paid right away.

So to be clear, I'm giving you the mandatory minimum which is 35 years. And if you were to come back at any time that I certainly would consider what takes place then. But for right now, it's 35 years.

And given the gravity of the offenses, the 12 armed robberies and Congress' direction, I think that's sufficient under these circumstances.

I remand you to custody at this time.

Thank you.

MR. THOMAS: Thank you.

THE COURT: You have a restitution order?

MR. FAHEY: Your Honor, we do. If we could

submit it later just so that there's time for him to review it.

THE COURT: That's fine. All right. Thank you.

MS. AHMAD: Thank you, Your Honor.

THE COURT: Thank you.

(Proceeding concluded at 9:30 a.m.)

CERTIFICATE OF REPORTER

I, Renecia Wilson, an official court reporter for the United State District Court of Virginia, Alexandria Division, do hereby certify that I reported by machine shorthand, in my official capacity, the proceedings had upon the sentencing in the case of United States of America vs. Eugene Anthony Thomas.

I further certify that I was authorized and did report by stenotype the proceedings and evidence in said sentencing, and that the foregoing pages, numbered 1 to 12, inclusive, constitute the official transcript of said proceedings as taken from my shorthand notes.

IN WITNESS WHEREOF, I have hereto subscribed my name this 22nd day of April, 2015.

/s/
Renecia Wilson, RMR, CRR
Official Court Reporter